**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

FILED

DEC 1 2 2011

CLERK, US DISTRICT COURT
NEWPORT NEWS, VA

WANDA R. TYNES,

    Plaintiff,

    v.                           Case No.: 4:10cv146

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

The plaintiff, Wanda R. Tynes ("Tynes"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under the Social Security Act ("the Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed February 3, 2011. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Previous Denials of Benefits

At the time of Tynes's date last insured she was 46 years old.[1] She has a high school diploma and one year of undergraduate college studies. (R.[2] 15, 96.)   The application for DIB at issue in this action is not the first claim for benefits that Tynes has filed. She had an earlier period of disability that began on March 1, 1988, and ended on November 30, 2001. (R. 40.) The Commissioner upheld the Agency's cessation determination on May 27, 2003. (R. 40.)   Subsequent to that decision, Tynes filed an application for DIB and Supplemental Security Income alleging a disability onset date of September 10, 1997.   Those claims were initially denied on December 9, 2003, and upon reconsideration on May 27, 2004. Id. Tynes timely requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration ("the Agency"), which was held on October 5, 2005. (R. 40.) The ALJ held that Tynes was not disabled within the meaning of the Act from December 1, 2001 through January 27, 2006 and issued a decision denying Tynes's

---

[1] "Under title II [of the Act], a period of disability cannot begin after a worker's disability insured status has expired. When the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured. In these situations, the person's age at the time of decisionmaking is immaterial." Soc. Sec. Ruling 83-10, 1983 WL 31251, at *8.

[2] "R." refers to the certified administrative record of proceedings relating to this case (ECF No. 7), filed under seal pursuant to Local Civil Rule 7(C)(1).

claims.[3] (R. 40, 48.) The Appeals Council of the Office of Hearings and Administration ("Appeals Council") denied Tynes's request for review on March 24, 2008, (R. 35-38), rendering the ALJ's decision the "final decision" of the Commissioner pursuant to 42 U.S.C. § 405(g). See 20 C.F.R. §§ 404.981, 416.1481. Tynes did not appeal the Commissioner's final decision.

### B. Instant Application for Benefits

Tynes filed the instant application for DIB on September 28, 2007. (R. 9, 76-78.) She alleged a disability onset date of February 1, 2002. Id. She listed epilepsy, migraines, right leg muscle damage, left shoulder damage, drop foot, bulging disc in her back, bulging disc in her neck, and bulging disc in her hip as disabling conditions. (R. 9, 90, 477, 505.) The Agency initially denied Tynes's application on December 20, 2007, and on reconsideration on May 16, 2008. (R. 55-59, 60-62.)

Tynes requested a hearing before an ALJ, which was held on December 8, 2009. (R. 63-64, 20-32.) At her administrative hearing, the ALJ informed Tynes of her right to be represented by counsel, but she chose to proceed pro se. (R. 22.) Tynes testified at the

---

[3] Although Tynes alleged a disability onset date of September 1997, the ALJ only examined her eligibility for benefits as of December 1, 2001, because he determined that the Agency's cessation determination dealt with her claims through November 30, 2001. (R. 40.) Tynes's date last insured was September 30, 2005, but the ALJ concluded that Tynes was not under a disability through the date of his decision. (R. 43, 48.)

hearing, (R. 26-32), and a Vocational Expert was present but was not called upon to testify. (R. 25.)

On January 6, 2010, the ALJ issued a decision. (R. 6-16.) The ALJ found that Tynes was not entitled to disability insurance benefits because Tynes had not been under a disability as defined by the Act at any time from February 1, 2002, the alleged onset date, through September 30, 2005, the date last insured. (R. 16.) The ALJ found that Tynes had severe impairments of osteopathy of the left glenohumeral (shoulder) joint, low back pain, and migraine headaches. (R. 11.) The ALJ found Tynes capable of performing a full range of light work and of making adjustments to work that exists in significant numbers in the local and national economies. (R. 16.) On March 10, 2010, Tynes requested review of the ALJ's decision by the Appeals Council. (R. 4-5.) The Appeals Council denied review on September 21, 2010, (R. 1-3), making the ALJ's decision the "final decision" of the Commissioner subject to judicial review pursuant to 42 U.S.C. § 405(g). See 20 C.F.R. §§ 404.981, 416.1481.

Tynes instituted this action for judicial review of the Commissioner's decision denying her 2007 DIB claim on November 10, 2010 with a motion for leave to proceed in forma pauperis. (ECF No. 1.) Her motion was granted, (ECF No. 2), and she filed a pro se complaint on November 17, 2010, (ECF No. 3). The defendant filed an Answer on January 31, 2011. (ECF No. 8.) Tynes filed a

Motion for Summary Judgment on March 7, 2011. (ECF No. 12.) The defendant filed a Motion to Remand and a memorandum in support of its motion and in opposition to Tynes's Motion for Summary Judgment on April 6, 2011. (ECF Nos. 13, 14.) As neither party in this case has indicated special circumstances requiring oral argument, the case is deemed submitted for decision based on the motion papers and memoranda. See Local Civil Rule 7(J).

## II.  COMMISSIONER'S MOTION TO REMAND

The period of time at issue in Tynes's 2003 DIB claim, which the Commissioner denied, subsumes the period of time at issue in Tynes's instant claim.[4]  The Commissioner has therefore moved to remand this case to the Agency pursuant to sentence four of 42 U.S.C. § 405(g) so that the Agency may consider whether the principles of administrative res judicata bar Tynes's second DIB application.[5] (Def.'s Supp. Mem., at 2.)

Sentence four of 42 U.S.C. § 405(g) states that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

---

[4] Tynes's 2003 claims spanned December 1, 2001 through January 27, 2006. The instant claim spans February 1, 2002 through September 30, 2005, Tynes's date last insured.

[5] An ALJ may apply administrative res judicata to deny a claim for benefits where the Commissioner has "made a previous determination or decision . . .  about [a claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action. . . . "  20  C.F.R.  §  404.957(c)(1);  see  Peoples  v. Richardson, 455 F.2d 924, 925 (4th Cir. 1972).

-5-

of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand requires the Court to first make a substantive ruling and enter judgment on the correctness of the Commissioner's decision. See Shalala v. Schaefer, 509 U.S. 292, 297 (1993) (stating that sentence four authorizes "a district court to enter a judgment 'with or without' a remand order, not a remand order 'with or without' a judgment").[6] Id. Accordingly, this Court must examine the Commissioner's decision on the merits and affirm, modify, or reverse that decision before determining whether to remand the case for further administrative proceedings.[7] See Id.; 42 U.S.C. § 405(g). For the foregoing reasons, this Court RECOMMENDS that the Commissioner's Motion to Remand (ECF No. 13) be DENIED.

---

[6] A sentence four remand is distinct from a sentence six remand, which is available before the Commissioner files her answer for good cause shown or at any time upon a showing that there is new and material evidence and that good cause existed for failing to consider such evidence in a prior proceeding. 42 U.S.C. § 405(g). Neither basis for a sentence six remand exists in this case.

[7] Tynes's 2003 and 2007 benefits claims both listed injuries to her left shoulder, low back pain, migraine headaches, seizure disorder, and hip pain as disabling impairments. (R. 11-12, 43.) Because the ALJ considered Tynes's 2007 DIB claim on the merits rather than invoking res judicata to bar it, this Court has subject matter jurisdiction to review that decision. See 20 C.F.R. § 404.957(c)(1) ("The administrative law judge . . . [may] refuse to consider any one or more of the issues because . . . [t]he doctrine of res judicata applies. . . ."); McGowen v. Harris, 666 F.2d 60, 65 (4th Cir. 1981) ("[E]ven though the subsequent claim be the same claim for res judicata purposes, if it has nevertheless been reconsidered on the merits to any extent and at any administrative level, it is thereupon properly treated as having been, to that extent, reopened as a matter of administrative discretion under 20 C.F.R. § 404.989 (1981)."); Farley v. Califano, 599 F.2d 606, 608 (4th Cir. 1979).

## III. **THE ALJ'S DECISION**

The Social Security Regulations define "disability" for the purpose

of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment[8] which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C.

§ 423(d)(1)(a). To meet this definition, the claimant must have a

severe impairment that makes it impossible to do previous work or

any other substantial gainful activity that exists in the national

economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C.

§ 423(d)(2)(A).

### A. **The Five-Step Sequential Analysis**

The Commissioner follows a five-step sequential analysis to

ascertain whether the claimant is disabled, which is set forth at

20 C.F.R. §§ 404.1520 and 416.920. See Hall v. Harris, 658 F.2d

260, 264-65 (4th Cir. 1981). Under this process, the ALJ must

determine in sequence:

> (1) Whether the claimant is engaged in substantial gainful
>
> activity (i.e., whether the claimant is working). If so,
>
> the claimant is not disabled and the inquiry is halted.

---

[8] A medically determinable physical or mental impairment is an
impairment resulting from "anatomical, physiological, or
psychological abnormalities which are demonstrable by medically
acceptable clinical and laboratory diagnostic techniques." 42
U.S.C. § 423(d)(3).

(2)  Whether the claimant has a severe impairment. If not,
     then the claimant is not disabled and the inquiry is
     halted.

(3)  Whether the impairment meets or equals the medical
     criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1,
     which sets forth a list of impairments that warrant a
     finding of disability without considering vocational
     criteria. If so, the claimant is disabled and the
     inquiry is halted.

(4)  Whether the impairment prevents the claimant from
     performing past relevant work. If not, the claimant is
     not disabled and the inquiry is halted.

(5)  Whether the claimant is able to perform any other work
     considering both her residual functional capacity[9] and
     her vocational abilities. If so, the claimant is not
     disabled.

In this case, the ALJ reached the fifth step of the sequence,
at which point he determined that Tynes was not disabled. (R. 15.)

## B. Steps One Through Three

At step one, the ALJ first determined that Tynes had not
engaged in substantial gainful activity at any time since February

---

[9] "Residual functional capacity" is the most a claimant can do in a
work setting despite the physical and mental limitations of her
impairments and any related symptoms (e.g., pain). See 20 C.F.R.
§ 404.1545(a)(1).

-8-

1, 2002, the alleged onset date of disability. (R. 11.) At step two, the ALJ found that Tynes had the following severe impairments: osteopathy of the left glenohumeral (shoulder) joint, low back pain, and migraine headaches. (R. 11.) The ALJ also examined medical evidence of Tynes's seizure disorder, meniscal degeneration in her right knee, and cervical disc protrusion and spondylosis. He concluded that these impairments were "nonsevere because they did not exist for a continuous period of at least 12 months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations." (R. 11-12.) The ALJ found that the record did not establish a medically determinable impairment related to an alleged bulging disc in Tynes's hip. (R. 12.) At step three, the ALJ found that Tynes did not have an impairment or combination of impairments listed in, or medically equal to, an impairment included in the Secretary's Listing of Impairments located at Appendix 1 to 20 C.F.R. pt. 404, subpt. P. Id.

### C. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Tynes's residual functional capacity ("RFC") based on the evidence in the record, including Tynes's testimony, the findings of treating and examining physicians, and the opinions of the state agency medical consultants, who were two non-examining physicians. (R. 13.)

Evaluating the evidence as a whole, the ALJ determined that "through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the claimant can lift 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours and sit for 6 hours in an 8-hour workday." [10] (R. 13.)

In reaching a conclusion about Tynes's RFC, the ALJ considered Tyne's credibility and found that evidence in the record supported the existence of medically determinable impairments that could reasonably be expected to produce the symptoms of which Tynes complained, including falls from seizures, migraine headaches, shoulder pain, and low back pain. (R. 14.)  However, the ALJ determined that "the record does not support the degree of limitation alleged," and concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 14.)

Pursuant to Social Security Ruling 96-6p, the ALJ gave significant weight to the findings of the state agency medical

---

[10] Light work is work that requires the physical exertional capacity to "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

consultants concerning Tynes's exertional limitations.[11] Two state agency medical consultants completed a Physical Residual Functional Capacity Assessment for Tynes. The first was completed by a non-examining physician on December 20, 2007, and was later affirmed by another non-examining physician on May 15, 2008. Each consultant found Tynes capable of light work activity based on medical evidence through September 2005. (R. 477-78, 505.) They found Tynes capable of lifting or carrying up to twenty pounds occasionally and ten pounds frequently. (R. 473, 501.) They also found that she was capable of standing or walking with normal breaks for six of eight hours a day. Id. The ALJ concluded that these findings were entitled to significant weight because they were consistent with the conservative nature of treatment required after Tynes's shoulder surgeries and with the objective findings on examinations through Tynes's date last insured. (R. 14.)

The consultants also found that Tynes could occasionally perform work in which she would be required to climb ramps and stairs and in which she would occasionally be required to kneel, crouch, and crawl. (R. 473, 501.) She could not perform work requiring her to climb ladders, ropes, or scaffolds or that

---

[11] Exertional limitations are restrictions imposed by a claimant's impairments and related symptoms that affect the claimant's ability to meet the strength demands of jobs. See 20 C.F.R. 404.1569a; Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5. There are seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5.

-11-

required her to be around machinery or heights. (R. 473, 475, 501, 503.) They noted that she had manipulative limitations in her left arm affecting her ability to reach in all directions, including overhead.[12] (R. 474, 502.)

The ALJ gave minimal weight to the Residual Functional Capacity Questionnaire prepared by Dr. Winfield, one of Tynes's treating physicians, in July 2009. (R. 14, 513-17.) Dr. Winfield's report indicated that Tynes suffered from foot drop[13] and low back syndrome. (R. 513.) It further indicated that she could sit for no more than two hours before needing to get up and for a total of four out of eight hours, that she could stand for fifteen minutes without needing to change positions and for a total of four out of eight hours, and that she could walk no more than one city block without rest or severe pain. (R. 514-15.) The ALJ concluded that Dr. Winfield's opinion did not "relate back to the period of time

---

[12] The state agency medical consultants' findings concerning Tynes's non-strength-related limitations relate to her nonexertional limitations. Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an individual's physical strength, including postural and environmental limitations." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *6; see 20 CFR § 404.1569a(c).

[13] Foot drop is characterized as the "[p]atrial or total inability to dorsiflex the foot, as a consequence of which the toes drag on the ground during walking unless a steppage gait is used; most often ultimately due to weakness of the dorsiflexor muscles of the foot (especially the tibialis anterior), but has many causes, including disorders of the central nervous system, motor unit, tendons, and bones." Stedman's Medical Dictionary 698 (27th ed. 2000).

at issue and [was] not consistent with the objective findings on examinations or with the information in treatment notes through September 30, 2005." (R. 15.)

### D. Past Relevant Work

At step four, the ALJ concluded that Tynes had no relevant past work because she had not engaged in substantial gainful activity within the past fifteen years.[14] (R. 14.)

### E. Ability to Perform Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.912; Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

Pursuant to Rule 201.00(h)(1) of the Medical-Vocational Guidelines ("the grids") located in Appendix 2 to 20 C.F.R. pt. 404, subpt. P, the ALJ found that as of Tynes's date last insured she was a "younger individual" at the age of 46 and that her age

---

[14] Past relevant work is work that the claimant has performed within the past fifteen years and that the claimant performed long enough to learn how to do it. 20 C.F.R. § 404.1560(b).

category subsequently changed to that of an individual closely approaching advanced age.[15] (R. 15.) The ALJ further noted that Tynes had a high school education, had completed one year of college, and had no relevant past work experience. Id. Based on these findings and the conclusion that Tynes retained the RFC to perform the full range of light work, the ALJ concluded that Tynes was not disabled pursuant to Rules 202.20 and 202.13 of the grids. (R. 16.); see 20 C.F.R. pt. 404, subpt. P, app. 2. He noted that the nonexertional limitations of Tynes's seizure disorder, which were documented by the state agency medical consultants, did not affect the occupational base for light work. (R. 16.) See Soc. Sec. Ruling 83-14, 1983 WL 31254, at *4.

## IV. ISSUES ON APPEAL

Tynes is a pro se litigant. As such, she is entitled to a liberal reading of her pleadings. Jacobi v. Blocker, 153 F.R.D. 84, 86 (E.D. Va. 1994). Moreover, the Court notes that "trial courts are encouraged to liberally treat procedural errors made by pro se litigants, especially when a technical or arcane procedural rule is involved." Bauer v. Comm'r, 97 F.3d 45, 49 (4th Cir. 1996).[16]

---

[15] Claimants under the age of fifty are considered younger individuals. 20 C.F.R. § 404.1563(c). Claimants between the ages of fifty and fifty-four are considered individuals approaching advanced age. § 404.1563(d). Tynes was fifty at the time of her administrative hearing on the instant DIB application. (R. 9, 15.)
[16] Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights

With these principles in mind, the Court construes Tynes's filings as seeking reversal of the ALJ's decision because: (1) the ALJ failed to consider and give controlling weight to the opinion of one of Tynes's treating physicians, Dr. Winfield, (2) the ALJ's conclusion that Tynes had the RFC to perform the full range of light work through September 30, 2005 was not supported by substantial evidence, and (3) the ALJ erred by relying on the grids to direct a finding of not disabled.

## V.   STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The scope of judicial review of the Commissioner's final decision is specific and narrow. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); see 42 U.S.C. § 405(g).  This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision and whether that determination was based on the correct application of the law.  42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam); Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is

---

because of their lack of legal training. While the right "does not exempt a party from compliance with relevant rules of procedural and substantive law," it should not be impaired by harsh application of technical rules. Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

not binding if it was reached by means of an improper standard or misapplication of law.").

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter, 993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1453 (citing King v. Califano, 599 F.2d 497, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson v. Perales,

-16-

402 U.S. 389, 401 (1971). Accordingly, the Court will not re-weigh the evidence in the administrative record. Rather it will determine whether a reasonable mind could conclude that the evidence in the record sufficiently supports the ALJ's decision and whether that decision was reached based upon the correct application of relevant law. See Coffman v. Bowen, 829 F.2d at 517; Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967).

## VI. ANALYSIS

### A. ALJ's Consideration of Dr. Winfield's Opinion Evidence

The Court construes Tynes's filings as arguing that the ALJ failed to consider and give controlling weight to the opinion of her treating physician, Dr. Winfield.

Tynes complains that the ALJ rendered his decision without allowing Tynes to submit additional evidence from Dr. Winfield. (Pl.'s Summ. J. Mot., at 1.) A Court may remand a claim for consideration of additional evidence where the hearing officer promised but failed to obtain opinion evidence or where a party demonstrates that new and material evidence exists that was not available at a prior proceeding. See 42 U.S.C. § 405(g); Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996) (explaining that a district judge did not err in refusing to remand claim for benefits to the Commissioner because the claimant did not present new or material evidence to the court); Marsh v. Harris, 632 F.2d 296, 298 (4th Cir. 1980) (holding that ALJ failed to develop the

-17-

administrative record when he promised the claimant that he would obtain additional evidence from the claimant's treating physician but closed the record without obtaining it). Yet, the hearing transcript reveals that the ALJ never agreed to postpone issuing a decision until he received the alleged evidence from Dr. Winfield,[17] and Tynes has not submitted any new evidence from Dr. Winfield to the Court. Moreover, the record is replete with opinions, examination, and treatment notes from Dr. Winfield through 2009. Accordingly, Tynes has not established a sufficient basis for remanding her claim so that the Commissioner may consider additional evidence from Dr. Winfield. Smith, 99 F.3d at 638 n.5.

The ALJ concluded that Dr. Winfield's opinion in the 2009 Residual Functional Capacity Questionnaire that he completed for Tynes was entitled to minimal weight. (R. 15.) Tynes expresses confusion over the fact that the ALJ rendered a decision contrary to Dr. Winfield's assessment. (Pl's Compl., at 1.) Dr. Winfield is one of Tynes's treating physicians and appears to be a pain management specialist. (Pl.'s Summ. J. Mot., at 1.)

Generally, a treating physician's opinion as to the existence, nature, or severity of a claimant's impairment is entitled to controlling weight if it is well-supported by medically acceptable

---

[17] The ALJ did encourage Tynes to review the medical documentation that the Agency had received relating to her claim and stated that she could notify him if she found that documentation was missing. (R. 23.) There is no evidence that Tynes attempted to supplement the record.

clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). But the ALJ may give less weight to the opinion of a treating physician where other persuasive evidence in the record contradicts the opinion. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1999). Moreover, an ALJ may discount the opinion of a treating physician as irrelevant where the opinion is rendered a considerable amount of time after the claimant's date last insured.[18] See Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005)(holding that the opinion of a treating physician rendered nine months after the claimant's date last insured was irrelevant).

Dr. Winfield completed the Physical RFC Questionnaire in July 2009. The questionnaire indicates that Tynes cannot sit for more than two hours at a time, cannot stand for more than fifteen minutes at a time, and is only capable of walking one city block before experiencing severe pain or needing to rest. (R. 514, 517.) It further states that she is capable of sitting for only four hours and standing/walking for only two hours in an eight hour day. (R. 515.) The ALJ concluded that Dr. Winfield's 2009 opinion was entitled to minimal weight because it did not relate to Tynes's impairments prior to Tynes's date last insured, September 30, 2005,

---

[18] "To qualify for DIB, [the claimant] must prove that she became disabled prior to the expiration of her insured status." Johnson, 434 F.3d at 655-56 (4th Cir. 2005) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a)).

and was inconsistent with other medical evidence in the record.[19] (R. 15.)

This conclusion is appropriate. First, Dr. Winfield completed the Physical RFC Questionnaire almost four years after Tynes's date last insured, and there is no indication that the opinion pertains to Tynes's capabilities prior to that date. See Johnson, 434 F.3d at 656; Yost v. Barnhart, 79 No. 03-1512, 2003 WL 22417516, *1 (4th Cir. Oct. 24, 2003) (holding that ALJ did not err in rejecting the opinion of a physician that was rendered four months after the claimant's date last insured). Second, even if read in a retrospective manner, the opinion conflicts with other persuasive evidence in the record pertaining to Tynes's exertional capabilities and limitations prior to September 30, 2005. See Johnson, 434 F.3d at 655-56 & n.8 (explaining that an alternative ground for rejecting the opinion of a treating physician rendered after the claimant's date last insured was the fact that it conflicted with other medical evidence in the record); Byam v. Barnhart, 324 F.3d 110, 121 (2d Cir. 2003) ("[A] treating

---

[19] The Court notes that even if the ALJ had given controlling weight to Dr. Winfield's opinion, the opinion would not necessarily support a finding that Tynes is disabled. See Soc. Sec. Ruling 96-9p, 1996 WL 37415, at *5-9 (explaining that where an individual's exertional limitations erode the full range of the sedentary occupational base, the adjudicator may need to consult vocational resources to determine whether a significant number of jobs exist in the national economy to which the claimant can adjust).

physician's retrospective diagnosis . . . is entitled to controlling weight unless it is contradicted by other medical evidence.").

On August 16, 2005, Tynes presented to her primary care physician, Dr. Dwight D. Herbert. (R. 224.) Upon examination, Dr. Herbert noted that Tynes's gait and station were normal. Id. He wrote in his treatment notes that "I'm not convinced with her inability not to work in any type of employment." Id. A month earlier, on July 20, 2005, Tynes had presented to Dr. Herbert complaining of foot numbness. (R. 226.) Dr. Herbert noted that Tynes had a history of some swelling and numbness in her right lower extremity. Id. Upon examination, he observed that Tynes's right leg had a full range of motion, was nontender, had no deformities, and that there was no swelling or warmth in her joints. Id. He observed numbness in her right foot, but she scored five out of five on a motor strength test. Id.

Prior to 2005, the record includes documentation of decreased strength and reports that Tynes was in physical therapy for her right leg, on which she had previously had surgery. (R. 230, 380, 390.) A 2004 MRI of her right knee disclosed early degeneration of the medial meniscus. (R. 341.) Yet, the Court's review of the record reveals that she displayed normal gait and ambulation with no signs of atrophy through September 30, 2005. (R. 224, 231, 233-234, 379.) Moreover, the state agency medical

-21-

consultants concluded that the medical evidence through September 30, 2005 showed that Tynes had good bilateral muscle strength and tone, that her gait and station were normal, and that she was capable of standing and/or walking with normal breaks for six out of eight hours.[20]   (R. 473, 477, 501, 504.)

Having reviewed the entire administrative record, the Court finds that Dr. Winfield's 2009 opinion is irrelevant to the extent that it was rendered years after Tynes's date last insured and does not purport to cover the period during which Tynes was eligible to receive benefits.  Moreover, Dr. Winfield's opinion is contradicted by other persuasive evidence in the record that is contemporaneous with the period during which Tynes was eligible for benefits. Accordingly, the Court finds that substantial evidence supported the ALJ's decision to give Dr. Winfield's opinion minimal weight.

## B. ALJ's Finding that Tynes had the RFC to Perform the Full Range of Light Work

In reaching the conclusion that Tynes had the RFC to perform the full range of light work, the ALJ considered the objective

---

[20] Notably, in a medical evaluation that Dr. Winfield completed for Tynes in 2008 based on a December 2007 examination, he stated that although Tynes had problems walking and standing, she was capable of performing sedentary work.  (R. 509.)  Although the final determination of disability is reserved to the Commissioner, 20 C.F.R. § 404.1527(e)(1), this statement indicates that Dr. Winfield considered Tynes capable of performing substantial gainful activity prior to 2009. See Johnson, 434 F.3d at 655 n.8 (affirming ALJ's decision to discount opinion of treating physician where it conflicted with the physician's prior opinion).

medical evidence in the record, the opinions of Tynes's physicians, the opinions of the state agency medical consultants, and Tynes's testimony.  (R. 14); see 20 C.F.R. § 404.1545(a)(3) ("[The Agency] will assess [a claimant's] residual functional capacity based on all of the relevant medical and other evidence.") In doing so, the ALJ determined that Tynes's statements concerning the severity, persistence, and limiting effects of her symptoms were only partially credible. (R. 13.) The ALJ gave significant weight to the opinions of the state agency medical consultants, but, as discussed above, he gave minimal weight to the 2009 opinion of Tynes's treating physician, Dr. Winfield. (R. 15.) Having reviewed the entire administrative record, the Court finds substantial evidence to support the ALJ's RFC determination.

### 1. Weight Given to Opinions of State Agency Medical Consultants

In concluding that Tynes retained the RFC to perform light work, the ALJ gave significant weight to the opinions of the state agency medical consultants concerning Tynes's exertional limitations. When an ALJ does not give controlling weight to the opinion of a treating physician, the ALJ must consider the following factors in assigning weight to the medical opinions of other sources: (1) the source's examining relationship with the claimant, (2) the source's treatment relationship with the claimant, (3) the amount of relevant evidence supporting the

-23-

source's opinion,[21] (4) the opinion's consistency with the record as a whole, (5) the source's medical specialization, and (6) other factors, including the source's understanding of the Agency's disability programs and the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(d). This Court gives great deference to the credibility determinations of the ALJ. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir.1997).

The state agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(f)(2)(i). After reviewing the medical evidence through September 30, 2005, they found that Tynes had the exertional capacity to lift up to ten pounds frequently and up to twenty pounds occasionally and to push/pull the same. (R. 473, 501.) They also found her capable of sitting and standing/walking for six hours in an eight-hour workday with normal breaks. (R. 473, 501.) They determined that her nonexertional limitations prevented her from ever climbing ladders, ropes, or scaffolds, but that she could occasionally kneel, crouch, crawl, and climb ramps and stairs. Id. The consultants cited significant medical evidence through September 30, 2005 to support their conclusions. (R. 477, 505.) Moreover, as discussed more fully

---

[21] When the opinion evidence under consideration is that of a nonexamining physician, the weight afforded to the opinion is particularly dependent upon the level of supporting explanation provided. 20 C.F.R. § 404.1527(d)(3).

-24-

below,[22] their findings are consistent with other persuasive evidence in the record.

Having reviewed the entire record, the Court finds that the ALJ's decision to assign significant weight to the opinions of the state agency medical consultants is supported by substantial evidence and correct under controlling law. See 20 C.F.R. §§ 404.1527(f)(2); Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *1 ("Findings of fact made by State agency . . . [physicians] . . . regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining

---

[22] See Part VI.B.2.i-iii, 3. The medical evidence through Tynes's date last insured documents surgery on her left shoulder in 2003 and subsequent mild degenerative changes in the same shoulder. (R. 176, 438.) Tynes's physicians prescribed physical therapy and pain medication as treatment. (R. 494, 496.) The consultants' assessment that Tynes was limited in her ability to reach in all directions with her left arm and that she could only occasionally lift up to twenty pounds appear to account for the limitations associated with Tynes's shoulder impairment. The medical evidence through Tynes's date last insured also documents early degeneration in her right knee and a herniated disc in her cervical spine, (R. 178, 179, 230, 341); however, these impairments did not significantly affect her ability to ambulate, (R. 224). Tynes complained of pain in her lower back and weakness in her legs, but tests and examinations revealed no abnormalities in her lumbar spine, and her gait was normal as of August 16, 2005. (R. 29, 90, 224, 340.) Accordingly, the postural and exertional limitations in the consultants' RFC assessment appear to account for Tynes's limitations associated with these impairments. Although Tynes complained of debilitating seizures, the medical evidence documents one nocturnal seizure per year from 2003 through 2005, and her treating physician believed that her seizure disorder was under control. (R. 229, 232, 418.) The consultants' assessment that Tynes should avoid all hazards such as heights and machinery appears to comport with the medical evidence concerning the limitations associated with Tynes's seizure disorder.

sources at the [ALJ] and Appeals Council level of administrative review.").

## 2. **Tynes's Credibility**

The ALJ compared Tynes's statements concerning the limiting effects of her impairments with the objective medical evidence in the record. See 20 C.F.R. § 404.1545(e); Craig, 76 F.3d at 591. The ALJ concluded that Tynes had medically determinable impairments that "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible to the extent they are inconsistent with the [] residual functional capacity assessment [that the claimant is capable of performing the full range of light work]." (R. 14.)

Credibility determinations are reserved to the ALJ. See Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir. 1988) ("Deference must be given the fact-finder's inferences and credibility assessments."); Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) ("The ALJ is required to make credibility determinations."). The Court's analysis is therefore restricted to determining wheter the ALJ's decision is supported by substantial evidence and whether the ALJ applied the correct legal standard. Craig, 76 F.3d at 589.

In evaluating a claimant's subjective complaints regarding pain or other symptoms, the ALJ must follow a two-step process: (1)

determine whether there is objective medical evidence showing the existence of "a medically determinable impairment(s) that could reasonably be expected to produce [the] symptoms, such as pain" alleged; and (2) if there is such evidence, "evaluate the intensity and persistence of [the claimant's] symptoms [in order to] determine how [the] symptoms limit [the claimant's] capacity for work."  20 C.F.R. § 404.1529(c)(1); see also Craig, 76 F.3d at 594-95; Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4.  In conducting the second step of the analysis, the ALJ is required to make a credibility determination as to the claimant's statements "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2; see also 20 C.F.R. § 404.1529(c)(4).  Where the ALJ makes a negative credibility determination, he must specify the reasons for his decision and the evidence informing it.  Hammond, 765 F.2d at 426; Ivey v. Barnhart, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005).

At her administrative hearing, Tynes testified that epilepsy, back pain, pain from migraines, and falls were her biggest problems.  (R. 29.)  She reported the use of a leg brace and cane. In the Functional Report that Tynes completed in November 2007, she stated that she cannot do any heavy lifting, pushing, or pulling. (R. 104.)  She also indicated that she cannot walk more than twenty

steps without needing to stop and that she cannot sit for a long period of time due to pain in her back and hip. Id. In reaching the conclusion that Tynes retained the RFC to perform light work and that her subjective statements were entitled to partial credit, the ALJ considered the exertional limitations caused by Tynes's left shoulder impairment and low back pain—impairments that the ALJ determined were severe at step two—as well as the exertional limitations of Tynes's epilepsy and weakness in her legs. See 20 C.F.R. § 404.1545(a)(2), (4) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," . . . when we assess your residual functional capacity.").[23]

At step two of the disability analysis, the ALJ concluded that osteopathy in Tynes's left glenohumeral (shoulder) joint and low back pain constituted severe impairments, meaning that these impairments could be expected to significantly limit her ability to engage in basic work activities. See 20 C.F.R. § 404.1521(a); Soc. Sec. Ruling 96-3p, 1996 WL 374181, at *1.

---

[23] In assessing a claimant's RFC the ALJ need only consider symptoms and limitations of those impairments that are medically determinable. See 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 404.1508; Soc. Sec. Ruling 82-53, 1982 WL 31374, *4-5. Accordingly, to the extent that the ALJ found that Tynes's hip pain did not result from a medically determinable impairment, he did not need to consider the impairment in his RFC analysis.

### i.   Documentation of Limitations from Left Shoulder and Back Impairments

With respect to Tynes's shoulder impairment, the record reflects that Tynes underwent subacromial decompression and AC joint reconstruction surgery on her left shoulder in August 2003. (R. 438.)  After surgery, Tynes's range of motion increased, but she experienced tenderness in her left shoulder region and pain upon raising her arm. (R. 494.) Her physician, Dr. Aldridge, prescribed physical therapy, oral pain relievers, and also provided localized injections for pain relief. (R. 494, 496.)  On July 28, 2004, an MRI of Tynes's left shoulder revealed degenerative joint disease (arthritis) of mild to moderate severity. (R. 176.)  The diagnostic physician also observed what he thought to be a partial tear in her supraspinatus muscle.[24] (R. 176-77.)

On July 7 and August 13, 2004, Tynes reported to the emergency room after minor car accidents. On both occasions, she rated her shoulder pain as a seven out of ten, (R. 370, 381), but her x-rays were negative for fractures or soft-tissue swelling. (R. 370, 382.) The examination notes from the August visit indicate that her range of motion was normal. (R. 370.) She was prescribed muscle relaxants and pain relievers upon discharge. (R. 372, 382.)

---

[24] "Intrinsic muscle of the shoulder joint, the tendon of which contributes to the rotator cuff." Stedman's Medical Dictionary 1732 (27th ed. 2000).

At a follow-up visit on August 17, 2004 with Dr. Herbert, Tynes rated the pain in her left shoulder as six out of ten. (R. 234.) Dr. Herbert's examination notes indicate that pain was present upon overhead motion. Id. Dr. Herbert instructed Tynes to continue physical therapy and to continue taking Darvocet and Naprosyn for pain. (R. 234.)

Upon review of this evidence, the state agency medical consultants determined that Tynes was capable of lifting and pulling/pushing twenty pounds occasionally and ten pounds regularly, (R. 473, 501), and that her left arm was limited in its ability to reach in all directions, (R. 474, 502).

With respect to Tynes's back pain, the record confirms, as the ALJ acknowledged, that Tynes made repeated complaints of back-related pain throughout the relevant period. A diagnostic examination of Tynes's lumbar spine in April 2004, which included oblique views, failed to demonstrate defects in architecture or alignment. (R. 340.) Her sacroiliac joints were also normal in appearance. Id.

An MRI of Tynes's cervical spine on July 1, 2004 revealed a herniated disc in her cervical spine. (R. 178, 179, 230.) One of her treating physicians, Dr. McAllister, recommended surgery to alleviate pain in Tynes's neck secondary to the herniated disc in her cervical spine, (R. 492), but she apparently did not elect the procedure. (R. 44.)

After the car accidents described above, Tynes reported increased back pain, and Dr. Herbert referred Tynes for physical therapy. (R. 168.) An evaluating physical therapist noted that Tynes reported that pain in her neck and shoulder was six out of ten and seven out of ten in her lower back. Id. She also reported that she could sit or stand for only a few minutes without pain. Id. The evaluation was positive for low back pain at fifty degrees on the left and forty degrees on the right. (R. 168.) The examiner hoped to decrease intensity of cervical spine, shoulder, and low back pain to two out of ten and increase Tynes's ability to sit and stand for half an hour without pain. (R. 169.) The examiner concluded that Tynes had a good prognosis. Id.

Dr. Herbert's examination note from August 16, 2005 documents Tynes's history of chronic low back pain and notes that her left low back and spine were tender. (R. 224.) However, he observed no deformities or abnormalities in her spine. Id. He prescribed Darvocet and Flexeril for her pain. Id.

Examination and treatment notes subsequent to Tynes's last insured date indicate that she continued to experience low back pain and that she received a prescription for a cane to assist with walking in November 2006. (R. 183, 194-95, 218.)

The state agency medical consultants' review of the medical evidence through Tynes's last insured date indicates that Tynes's impairments caused nonexertional postural limitations. They

-31-

nevertheless concluded that she was capable of sitting and standing/walking for six of eight hours a day. (R. 473, 501.)

### ii.   Documentation of Limitations from Epilepsy

The ALJ concluded that Tynes's seizure disorder was a medically determinable impairment, but he discredited Tynes's allegation of disabling seizures. (R. 13.)  Rather, he found that the medical evidence in the record did not support a finding of seizures with the frequency and severity that Tynes reported. (R. 14).

The record contains evidence that Tynes experienced a nocturnal seizure in February of 2003, January of 2004, and November of 2005. (R. 229, 232, 418.)  Tynes's medical records also indicate that her physicians prescribed her Dilantin, a medication to control epilepsy. (R. 229.) She nevertheless maintained her driver's license and continued to drive her car regularly. (R. 12, 27, 104.) In August 2004, Tynes's treating physician wrote in a treatment note, "I'm not concerned about her seizing: she has not had a seizure since January." (R. 232.)  The ALJ who considered Tynes 2003 benefits application also concluded that Tynes's epilepsy did not interfere with her ability to work on a regular basis (R. 47.) Although there is some evidence that Tynes's seizure disorder deteriorated in November 2006, (R. 192.), this evidence post-dates Tynes's date last insured by more than a year. See Johnson, 434 F.3d at 655-56; Miller v. Astrue, No. 2:08cv00065,

-32-

2009 WL 2567008, at *13 (W.D. Va. Aug. 17, 2009)(holding that medical records from a physician who treated the claimant after her date last insured were irrelevant).

### iii. Documentation of Limitations from Weakness in Tynes's Legs

In her 2007 application for benefits and at her hearing before the ALJ, Tynes complained of problems with her legs, including muscle weakness and drop foot in her right leg, which impair her ability to walk. (R. 29, 90.) She realleges these impairments in her filings with the Court, explaining that she walks with a brace and cane and sometimes uses a wheelchair when she shops. (Pl.'s Compl., at 2.) Upon review of the evidence, the ALJ concluded that "[m]ultiple physical examinations show that the claimant's gait and station were normal, that her muscle strength was normal and that sensation was intact" through September 30, 2005. (R. 14.) He determined that although Tynes had a medically determinable impairment that could cause weakness in her legs, "the examination notes and mild test results through September 30, 2005 do not support the frequency or severity of symptoms Ms. Tynes reports." (R. 14.)

Examination and treatment notes through September 30, 2005 indicate that Tynes occasionally suffered from weakness in her legs. (R. 168, 226.) In February 2004, an MRI revealed that she

had a possible vertical tear in her right medial meniscus[25] and

early degeneration changes in her knee. (R. 341.)  However, in the

months before her date last insured, her treating physician noted

that her gait and station were normal and that her motor strength

was not impaired. (R. 224.)  After reviewing the medical evidence

through Tynes's date last insured, the state agency medical

consultants concluded that Tynes was capable of standing and/or

walking  with  normal  breaks  for  six  out  of  eight  hours.

(R. 473, 501.)

On February 3, 2006, more than four months after her date last

insured, Tynes underwent an electromyography ("EMG") study ordered

by Dr. Winfield.[26] (R. 253.)  After reviewing the results and

performing a neurological motor examination, Dr. Winfield diagnosed

her with low back syndrome, leg length discrepancy, and right foot

drop.[27] (R. 218.)  He also prescribed Tynes an ankle foot orthosis

("AFO") to "keep her foot from catching and causing her to fall."

Id.  Dr. Winfield's examination and treatment notes indicate that

Tynes received and began using the AFO in 2006 and that she also

began using a single point cane, which he prescribed for her in

---

[25] The medial meniscus is a fibrocartilage structure in the knee.
Stedman's Medical Dictionary 1091 (27th ed. 2000).
[26] The physician who performed the EMG study concluded that the
results showed "mild motor sensory neuropathy and remote incomplete
axonal right deep peroneal focal neuropathy." (R. 254.)
[27] Tynes  displayed  "decreased  motor  strength  at  the  right
dorsiflexion as well as decreased range of motion on manual
contraction," and she was "lacking approximately 15 degrees
compared to the left side." Id.

-34-

November of that year. (R. 195, 219.) In a note from December 2006, Dr. Winfield stated that he believed Tynes might benefit from the use of a walk aid system.[28] As the ALJ noted, this evidence, which documents Tynes's condition subsequent to her date last insured, suggests that her condition deteriorated. But it does not purport to relate to her functional abilities or limitations on or prior to September 30, 2005. See Johnson, 434 F.3d at 655-56; Miller, 2009 WL 2567008, at *13.

As of Tynes's date last insured, the objective medical and opinion evidence indicates that her impairments did not substantially limit her walking/standing abilities. Accordingly, to the extent that Tynes's statements concerning the severity and frequency of her symptoms conflicted with this medical evidence, the ALJ properly discounted their credibility.

Based on the Court's review of the record, Tynes's statements concerning her exertional limitations from pain and other symptoms are inconsistent with medical evidence in the record through September 30, 2005. Accordingly, the Court finds that substantial evidence supported the ALJ's find that Tynes's statements were only partially credible and that the ALJ properly applied the relevant law in making this determination.

---

[28] A walk aide system is apparently a medical device that uses electrical stimulation to improve the walking ability of people with foot drop.

### 3. Consideration of Nonexertional Limitations

A claimant's RFC should reflect the claimant's exertional and nonexertional limitations that affect the claimant's capacity for work activity. See Soc. Sec. Ruling 96-8P, 1996 WL 374184, at *5.

The record indicates that Tynes's postural limitations allow her to occasionally climb ramps and stairs and kneel, crouch, or crawl but that she can never climb ladders, ropes, or scaffolds. (R. 474, 502.)  It also indicates that she should avoid all hazards such as heights and machinery, which are considered environmental limitations. (R. 477, 503); Soc. Sec. Ruling 96-8p, at *6.  She was further limited in her ability to reach overhead with her left arm. (R. 474, 502.) Although the ALJ apparently accounted for Tynes's manipulative limitations in the RFC assessment, (R. 15), the ALJ failed to consider her postural and environmental limitations.[29] Instead, in concluding that Tynes was capable of performing the full range of light work, the ALJ appears to have relied entirely on Tynes's physical exertional limitations. (R. 15); see 20 C.F.R. 404.1567(b) (defining light work in terms of physical exertional requirements).

Although this failure constitutes error, it is not prejudicial because Tynes's nonexertional limitations do not affect her ability

---

[29] In concluding that Tynes was not disabled under the grids, the ALJ noted that Tynes's inability to perform work that required her to be exposed to dangerous machinery or unprotected heights did not affect her ability to perform the full range of light work (R. 16.)

to perform substantially all jobs within the light work
occupational base. See Soc. Sec. Ruling 83-14, at *2, *5, *8
(explaining that a person who can occasionally crouch and crawl but
cannot climb scaffolding, ladders, poles, and ropes or be exposed
to heights and dangerous moving machinery would still be able to
perform all or substantially all of the light occupational base).
Because the ALJ's error is harmless, remand is not appropriate. See
Boone v. Halter, 23 Fed. App'x 182, 183 n.* (4th Cir. 2002); Camp
v. Massanari, 22 Fed. App'x 311, 311 (4th Cir. 2001); Tolliver v.
Astrue, No. 3:09CV372-HEH, 2010 WL 3463989, at *4 (E.D. Va. Sept.
3, 2010); Kersey v. Astrue, 614 F. Supp. 2d 679, 696 (W.D. Va.
2009).

     Based on the opinions of the state agency medical consultants
and supporting medical evidence, the Court finds that substantial
evidence supported the ALJ's conclusion that Tynes had the RFC to
perform the full range of light work as defined in 20 C.F.R.
§ 404.1567(b) through her date last insured.

### C. ALJ's Reliance on the Medical-Vocational Guidelines

     At step five, the Commissioner has the burden of showing that
jobs exist in significant numbers in the national economy which the
claimant could perform consistent with her RFC, age, education, and
past work experience. Wilson, 617 F.2d at 1053. In the instant
case, the ALJ relied on the the grids located in Appendix 2 to 20
C.F.R. pt. 404, subpt. P to determine that Tynes was not disabled

prior to her date last insured. (R. 16.) "The Grids categorize a
claimant's exertional limitations, age, education, and past work
experience to determine disability." Campbell v. Apfel, No.
97-2128, 1998 WL 911740, at *2 (4th Cir. Dec. 31, 1998). The
Commissioner may rely on the grids to meet her burden at step five
if the claimant has only exertional limitations or if the claimant
has nonexertional limitations that do not affect her ability to
perform the full range of work in a particular physical exertional
category, e.g. light work. See Campbell, 1998 WL 911740, at *2;
Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984); Soc. Sec.
Ruling 83-14, 1983 WL 31254, at *2.

The ALJ applied Medical-Vocational Rules 202.13 and 202.20 in
the grids to arrive at the conclusion that Tynes was not disabled.
Rule 202.13 directs a finding of not disabled for claimants who are
(1) capable of performing the physical requirements of a full range
of light work, (2) between the ages of fifty and fifty-four, (3)
have at least a high school education, and (4) have unskilled or no
prior work experience. 20 C.F.R. pt. 404, subpt. P. app. 2. Rule
202.20 directs a finding of not disabled for individuals who are
younger than fifty but otherwise possess the same occupational
profile as claimants in Rule 202.13. Id. Although Tynes had
nonexertional limitations affecting her RFC, as described above,
these limitations did not materially affect her ability to perform
all or substantially all of the light work occupational base. See

-38-

Soc. Sec. Ruling 83-14, at *2, *5, *8.  Accordingly, the Court finds that the ALJ properly used and applied the grids to find that Tynes was not disabled as of September 30, 2005.

## VII. CONCLUSION

Sentence four of U.S. Code section 405(g) requires the Court to enter judgment before determining whether to remand an action to the Agency for further consideration.  See Ford v. Apfel, No. 97-3601, 1998 WL 614190, at *2 (E.D. La. Sept. 10, 1998).  Because this Court cannot remand an action without first entering a judgment, the Court recommends denying the defendant's Motion to Remand so that the Agency may determine whether res judicata principles applied to Tynes's 2007 claim.

Having reviewed the merits of the instant action, the Court finds that the ALJ's decision to give Dr. Winfield's 2009 opinion minimal weight was supported by substantial evidence and was made in accordance with the relevant law.  The Court also finds that the ALJ erred in failing to consider Tynes's nonexertional limitations in determining Tynes's RFC.  However, this error was harmless, and the ALJ's ultimate conclusion that Tynes was capable of performing the full range of light work as of her date last insured was supported by substantial evidence.  The Court further finds that the ALJ properly relied upon the Medical-Vocational Guidelines to determine that Tynes was not disabled.

## VIII. **RECOMMENDATION**

For the foregoing reasons, the Court RECOMMENDS that the defendant's Motion for Remand (EFC No. 13) be DENIED. The Court further RECOMMENDS that the plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED. Finally, the Court RECOMMENDS that the Commissioner's decision denying Tynes's 2007 DIB application (R. 9-16) be AFFIRMED.

## IX. **REVIEW PROCEDURE**

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this

Court based on such findings and recommendations.   Thomas v. Arn,

474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984);

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).


UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

December 12, 2011